No. 13425

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

CARLYLE M. GARSJO,

          Petitioner and Appellant,

   -vs-

THE DEPARTMENT OF LABOR AND INDUSTRY
OF THE STATE OF MONTANA, a Municipal
Organization, and LORAINE HORNER,

          Defendants and Respondents.

---

Appeal from: District Court of the Seventeenth Judicial
          District
          Honorable M. James Sorte, Judge presiding.

Counsel of Record:

    For Appellant:

        Robert Hurly argued, Glasgow, Montana

    For Respondents:

        Garden and McCann, Wolf Point, Montana
        Jerry M. Schuster argued, Wolf Point, Montana
        J. Mayo Ashley argued, Helena, Montana

---

          Submitted: January 13, 1977
          Decided: MAR 17 1977

Filed: MAR 17 1977

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the district court, Valley County, which affirmed a wage decision by a hearings examiner in favor of Loraine Horner.

Carlyle M. Garsjo, employer, is the owner of the Rainbow Motel in Glasgow, Montana. In mid-summer 1974, he hired Loraine Horner, employee, to operate the motel. The first month she was employed on a trial basis and paid by the hour. During this month she worked and was paid for 14 hours per day. At the end of the trial period, she was hired full-time at $275 per month salary and an apartment at the motel valued at $125 per month which she was required to live in. During the term of the employment, employee's duties consisted of checking people in and out of the motel; attending the motel switchboard; keeping all of the motel records; doing a large part of the daily cleanup which included changing sheets, cleaning the rooms, doing the laundry, and other maintenance work. She was assisted in the cleanup by a series of part-time maids. The employer came by every few days to pick up the proceeds for deposit in the bank. Employee kept the records at the motel and the only hours she kept, after she became a salaried employee, were those hours she worked on her day off and for which she was paid overtime.

In the fall 1974, employee asked for a raise and failing to get one filed a wage claim with the Montana Department of Labor and Industry. A hearing was held before a Department of Labor and Industry hearings examiner who found that employee (1) was not employed in a "bona fide executive * * * capacity", (2) was covered

by the Montana Minimum Wage and Hours Act; (3) was not paid the proper wage; and (4) was due $2,267 in back wages.

Employer appealed the ruling pursuant to section 82-4216, R.C.M.1947, the judicial review section of the Montana Administrative Procedure Act. In his appeal to the district court employer raised the same issues he raises here:

1) Whether the Department of Labor's administrative regulations exceed the statutory authorization and are arbitrary and capricious.

2) Whether the live-in agreement is authorized by specific regulations promulgated by the Department.

3) Whether there was a failure of proof.

4) Whether there were inadequate findings of fact.

The district court ordered the employer to pay a 100% penalty and the employee's attorney fee. Employer also appeals from those orders.

Issue 1. Employer argues the regulations as promulgated absolutely prohibit the employee from being an executive because she did not receive $150 per week and she did not direct the work of two or more employees and are therefore unreasonable.

The Montana Minimum Wage and Hours Act provides at section 41-2304, R.C.M. 1947:

> "The provisions of section 41-2303 of this act shall not apply to:
>
> "* * * * *
>
> "(j) Any individual employed in a bona fide executive, administrative, or professional capacity as these terms are defined and delimited by regulations of the commissioner."

- 3 -

The commissioner of labor has promulgated regulations which cover over 40 pages in the Montana Administrative Code interpreting this section of the Act. For the most part these rules are a verbatim copy of the federal regulations (29 C.F.R. Part 541) promulgated to interpret the equivalent section of the Fair Labor Standards Act, modified to make them compatible with the Montana statute.

The regulations involved here are MAC 24-3.14BII(2)-S1420 and MAC 24-3.14BII(2)-S1450 (13). The first rule defines "Executive" and reads as applies here:

"(1) The term 'employee employed in a bona fide executive * * * capacity' in section 41-2304(j) of the Montana Minimum Wage Law shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent or in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in subsections (a) through (d) of this section:

"Provided, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20 percent interest in the enterprise in which he is employed; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $150 per week, exclusive of board, lodging, or other facilities * * *."

MAC 24-3.14BII(2)-S1450 (13) deals with the 'sole-charge exception' and states in pertinent part:

"(a)  An exception from the percentage limitations on nonexempt work is provided in MAC 24-3.14BII(2)-S1420 subsection (e) for 'an employee who is in sole charge of an independent establishment or a physically separated branch establishment * * *'.  Such an employee is considered to be employed in a bona fide executive capacity even though he exceeds the applicable percentage limitation on nonexempt work."

This Court had held the Montana Wage and Hours Act constitutional and the specific section in question here was held not to constitute an unlawful delegation in City of Billings v. Smith, 158 Mont. 197, 207, 490 P.2d 221, which sets out the test of the validity of regulations promulgated under the authority of section 41-2304(j), R.C.M. 1947:

"* * * such power is constitutionally exercised where the definition formulated by the administrator is within the limits laid down by the Congress which  * * * are marked out by the fair and natural meaning of the words 'bona fide executive * * * capacity.' (Emphasis added.) This indicates that to find the power to have been unconstitutionally exercised, this Court will have to find the definitions of the Commissioner of Labor to be outside the fair and natural meaning of the words.  See Walling v. Yeakley, * * * 140 F.2d 830."

The regulations attempt to set out specific objective and subjective criteria which are generally characteristic of an executive's job.  Certainly an executive must manage as his primary duty, and it would be rare indeed to find an executive who did not direct two or more employees--employees he has the authority to hire and fire.  The typical executive's job requires the exercise of discretion and he does executive type work as a substantial, if not exclusive, part of his job.  Therefore, these regulations are logical and well within the boundaries of the fair and natural meaning of the word "executive".

Here, employee does not fall within the requirements of subparts (a) through (e), MAC 24-3.14BII(2)-S1420, because she exercises little discretion and spends a substantial amount of her time doing nonexecutive work.

In Williams v. Corbett, 205 Ore. 69, 286 P.2d 115, 117, the Oregon court said:

> "Plaintiff's job was to clean the rooms, change bed linens, turn the mattresses from time to time, clean the windows, the hall and the lobby, take care of the lavatories and showers, and attend to the registering of guests. She kept the money paid by the guests until the defendant called for it, but she did not order supplies nor pay the bills. * * * *
>
> "We do not think that the words 'administrative' and 'executive', as they are commonly understood, may fairly be said to comprehend the duties of the plaintiff. Those words suggest something higher in the scale of employment than the calling of a maid-of-all work, with the few additional responsibilities which we have described thrown in. * * *"

The effect of the regulations set out above is that an employee who meets the requirements of MAC 24-3.14BII(2)-S1420, subparts (a) through (e), is a bona fide executive and is excepted from the minimum wage and overtime provisions of the statute. If the employee (1) spends over 40% of her time doing nonmanagement work, but is in sole charge of an independent enterprise, (2) meets the requirements of subparts (a) through (d), and (3) is paid more than $150 per week, then there is also an exception to the general applicability of the wage and hour provisions of the statute. The logic of these regulations is clear. A real full-time executive doing executive work is given an exemption from the minimum wage and overtime provisions no matter what he is paid, but an executive who does a substantial amount of nonexecutive work for which the minimum wage would have to be paid if done by another person, may avoid the provisions of the Act only if the pay is high enough to assure that the minimum wage law is not being circumvented.

In this case, assuming the hearings examiner's findings are correct and the employee worked a 14 hour day, six days a week, then the $150 per week requirement works out to approximately $1.80 per hour. This is certainly not an outrageous rate of pay for an executive. If the employee had been paid the $150 per week set by the rule to avoid "subterfuge executives" and the only difficulty would be the two employee requirement, then the employer's argument that as applies to this employee the regulation is unreasonable might carry some weight. But where, as here, the employee does not do a substantial amount of executive work, it does not. The regulations are reasonable.

Issue 2. The employer argues that MAC 24-3.14BII (14)-S14090, which speaks in terms of allowing reasonable agreements applies here. That regulation interprets the term "hours worked" and speaks of reasonable agreements as to computation of overtime where the employee is required to reside at the place of work. The cases interpreting the equivalent federal rule indicate that the regulation concerns agreements for computing compensation for overtime actually worked, or in excess of those hours actually worked. Case law holds that an employee may not enter into an agreement which operates to waive compensation for overtime actually worked. Skelly Oil Co. v. Jackson, 194 Okl. 183, 148 P.2d 182, Travis v. Ray, 41 F. Supp. 6. That regulation does not apply here.

Issue 3. The employer argues there was a failure of proof. The section under which appeal to the district court was taken, section 82-4216(7), R.C.M. 1947, sets out the standard of review of the evidence:

- 7 -

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. * * * The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

"* * *

"(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record."

Here, employer did not keep records required by law and which could have easily supplied the needed information. In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L ed 1515, 1523, the United States Supreme Court in a Fair Labor Standards Act case discussed this difficulty:

"* * * where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. * * *"

In Purcell v. Keegan, 359 Mich. 571, 103 N.W.2d 494, 497, the Michigan Supreme Court discussed this problem and set out exact procedure:

"* * * When the employee shows, as he did here, 'that he did in fact perform overtime work for which he was not properly compensated and produces sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference, the burden shifts to the employer to come forward with evidence of the precise amount of the work performed or with evidence to negate the reasonableness of the inference to be drawn from the evidence of the employee. And if the employer fails to produce such evidence, it is the duty of the court to enter judgment for the employee, even though the amount be only a reasonable approximation.' * * *."

- 8 -

In the instant case Loraine Horner testified she worked 16 hours each day but conceded that she left to take her child to school and do shopping. The time sheet for July indicates that while she was employed on an hourly basis, she was paid for 14 hours per day. No evidence as to the precise amount of work done was offered by the employer and the inference of the hearings examiner is a reasonable one. It is not clearly erroneous in view of the reliable, probative, and substantial evidence on the record as a whole. There is no failure of proof.

Issue 4. Employer alleges the findings of fact are inadequate. Under the review provisions of the Montana Administrative Procedure Act, section 82-4216(7), quoted heretofore and under which the employer appealed, subsection (g) thereof allows the district court to reverse:

> "(g) because findings of fact, upon issues essential to the decision, were not made although requested."

No request for the missing finding was made. The finding claimed to be missing is a finding setting out the number of hours for which payment is due. We note that the hearings examiner attached to his findings the worksheets he used to calculate the amount due. These worksheets adequately provided the necessary information. There is no error.

Employer next argues the assessment of penalties by the district court was error particularly in view of the fact they were not assessed by the hearings examiner. He cites and relies on State ex rel. Neiss v. District Court, 162 Mont. 324, 511 P.2d 979. That case is not applicable to the facts here for in Neiss the Court dealt with three categories of wage claims:

1. In the first group a deposit had been made by employer into the district court for wages due to a group of unidentified

employees. We noted there the employer having complied, there was no penalty due. Here, employer Garsjo made no deposit.

2. The second group, consisted of employees who had settled their claims. The Court held: "These employees having been represented by the county attorney * * * liquidated damages are not applicable." In the instant case, the employee had a private attorney.

3. The third group of employees brought the action either through the labor commissioner or the county attorney, and this Court noted the penalty was to be disposed of by the district court.

Under the provisions of section 41-1302, R.C.M. 1947, the commissioner of labor is charged in cases where he institutes an action for the collection of wages due, to collect the penalty. The wording of the statute is "A penalty shall * * * be assessed."

We find here no error in assessing the penalty.

The question of attorney fees is raised where not only the commissioner of labor presecutes the claim, but where in addition the employee has hired her own counsel. Employer here relies on <u>Neiss</u> but as noted heretofore, that case is distinguishable on the facts. There the employees were represented by the county attorney, who was carrying out his official duties. Here, private counsel was hired, even though the claim was assigned to the commissioner. Employee is entitled to an award of attorney fees. Section 41-1314.2, R.C.M. 1947, provides that the judgment should include all costs reasonably incurred in connection with the proceedings, including reasonable attorneys' fees. Here, the trial court set the attorney fees in the amount of $880 and no issue is raised as to the reasonableness of the fee.

The judgment is affirmed.

_____
Justice.

- 10 -

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.