No. 80-236

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

ROSEBUD COUNTY, Montana a body
Politic and Corporate,

Petitioner and Respondent,

vs.

LYNDON W. ROAN and LABOR STANDARDS
DIVISION, Department of Labor &
Industry, State of Montana,

Respondents and Appellants.

---

Appeal from: District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Montana
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellants:

Lucas and Monaghan, Miles City, Montana
A. Lance Tonn argued, Miles City, Montana
James Gardner, Jr. argued, Dept. of Labor, Helena,
Montana

For Respondent:

John S. Forsythe argued, County Attorney, Forsyth, Montana

---

Submitted: November 24, 1980

Decided: APR 30 1981

Filed: APR 30 1981

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Lyndon Roan, a wage claimant, and the Department of Labor and Industry, appeal the decision of the Rosebud County District Court which reversed a ruling of the Department awarding Roan overtime pay as an employee of Rosebud County, and also reversing the penalty award for failure to pay the overtime.

Lyndon Roan left the employ of Rosebud County on January 17, 1979. On February 3, 1979, he filed a claim with the Department of Labor and Industry alleging that Rosebud County failed to pay him for 426.75 hours worked as overtime. At the hearing on June 21, 1979, Roan reduced his claim to 358 overtime hours. The hearings officer ruled that Roan had worked and was entitled to 277.25 hours worked as overtime between February 1, 1978 and August 21, 1978. The hearings officer also ruled that Roan's position with the County did not exempt the County from the duty to pay him overtime, although he ruled that from August 21, 1978 until the end of his employment, Roan was a bona fide executive and the County had no duty to pay him overtime. Under section 39-3-206, MCA, the hearings officer also ruled that the County must pay the penalty in the amount of the overtime wages owed. The overtime amounted to $2,606.50 and the penalty was $2,606.50, and this combined amount was awarded to Roan.

The County appealed this decision to the Rosebud County District Court and there obtained a reversal of the Department's ruling. The County alleged in District Court that Roan's method of keeping track of his overtime hours was inadmissible as a matter of law and that absent this evidence, the award of overtime could not be sustained. The County also alleged

-2-

that the penalty was improper as a matter of law, in essence arguing that the County acted in good faith and therefore was not subject to the penalty provision.

The District Court ruled that the calendar on which Roan kept track of his overtime hours was properly admitted at the agency hearing to prove his overtime hours. It also appears that the District Court found nothing wrong with the method by which Roan proved the overtime hours worked. But the District Court nonetheless ruled on three separate grounds that Roan was not entitled to collect overtime pay. Although not necessary to its decision reversing the award of overtime, the District Court also ruled that the County had acted in good faith, and therefore, that the penalty provision under section 39-3-206, MCA, cannot be enforced.

We attempt here to summarize the District Court's rulings that Roan cannot collect overtime. First, the trial court ruled that Roan failed to demand the overtime at the time he did the work and that he failed to fill out the overtime forms, and therefore is precluded from collecting overtime. Second, Roan cannot collect overtime because "there is no evidence that the employer ever demanded, requested or even suggested that the employee work any overtime . . ." On this ground, the District Court ruled that because Roan had never been directed to work the overtime hours, and in doing it anyway Roan had illegally created his own employment contract. Third, without analyzing the required factors, the District Court ruled that Roan was at all times a bona fide executive and therefore, exempt from application of the overtime laws. Fourth, although not necessary to its decision, the District Court ruled that the County did not have to pay the statutory penalty under section 39-3-206, MCA, because the County had acted in good faith.

-3-

Both Roan and the Department of Labor and Industry appeal from these rulings reversing the order of the agency. The County also alleges that the trial court erred in ruling that Roan's calendar was properly admitted to prove overtime hours. We note that when the County appealed to the District Court, Roan also appealed from the ruling of the hearings officer that Roan became a bona fide executive on August 21, 1978 and therefore could not collect overtime wages between then and January 17, 1979, when his employment ended. But Roan does not raise this issue in this appeal.

Roan's status as an employee of Rosebud County centers around three time periods: First, from February 1, 1978 to March 14, 1978, when he was employed as a mechanic and was paid a monthly salary of $1,022 per month. He was one of two mechanics in the shop and he was supervised by Virgil Ferris, the county road foreman. Second, from March 14, 1978 to August 21, 1978, when Roan acted as foreman of the county shop and supervised, to an extent, the work of one mechanic, and also supervised 20 to 25 percent of the time of a secretary who divided her time between county shop matters and county road foreman matters. Roan's salary as foreman was increased by $50 per month to $1,072 per month on April 1, 1978 and on July 1, 1978, Roan's salary was increased another $50 per month to $1,122 per month. His salary increase amounted to a 5 percent higher salary than the other mechanic who worked in the shop. Third, the period between August 21, 1978, when a third mechanic started working in the county shop, and January 17, 1979, when Roan's employment ended.

The hearings officer ruled that Roan was not a bona fide executive until August 21, 1978, and therefore that between February 1, 1978 and August 21, 1978, the County

owed him overtime for all overtime hours worked during this period. The District Court's ruling is unclear as to <u>when</u> Roan became a bona fide executive, but it is clear to the extent that Roan was effectively declared a bona fide executive for all of the time periods in which he claimed overtime.

Lyndon Roan started working for Rosebud County in November 1977 when he was hired as a truck driver. His employment ended on January 17, 1979. As a truck driver, he was paid an hourly wage plus time and a half for overtime. Three months later, on February 1, 1978, the county commissioners hired him as a mechanic and changed his pay to a monthly salary. Roan was then one of two mechanics in the shop who had the duty of maintaining about 75 vehicles and assorted pieces of heavy machinery belonging to the County. The repair shop also housed the office and general headquarters of the road and bridge supervisor. Roan and the other mechanic worked under the direction of the road foreman. Roan started at a salary of $1,022 per month.

Because the County had a policy of not paying overtime to salaried employees, the County did not keep hourly records for salaried employees. Salaried employees, including Roan, were required to sign a handful of blank time sheets and the payroll clerk later filled in these time sheets--apparently to the effect that each salaried employee worked a 40-hour week. The county commissioners were aware of and approved of this procedure. Roan, however, kept a record of his overtime hours by writing them on a calendar he kept at home. He did so because he thought he would still be paid overtime even though he was a salaried employee.

Within two or three months of starting work as a mechanic on salary, Roan asked the county commissioners to be paid for his overtime. He was told that the County did not pay

overtime to salaried employees.  Later, he gave one of the county commissioners a list of the overtime hours worked, but still the County did not pay him.  Roan continued as a fulltime mechanic until March 14, 1978.

On March 14, 1978, the county commissioners created the job of shop-foreman and hired Roan.  They gave him a $50 per month salary increase which put his salary 5 percent above the other mechanic in the shop.  The shop foreman was in charge of all mechanic work in the shop.  Although Roan started as shop-foreman on March 14, his salary increase did not become effective until April 1.

After his appointment as shop-foreman, Roan's day-to-day activities did not change much.  He supervised to an extent, the other mechanic in that he told him which equipment to work on, but both mechanics independently ordered parts as needed.  They had no discretion where they purchased parts; the county commissioners told them where to purchase them.

Roan had no power to hire and fire, although on one or two occasions, the commissioners may have relied in part on Roan's recommendation when more help was hired for the county road department.  In addition to supervising somewhat the work of the other mechanic, Roan also supervised the work of a secretary who spent 20 to 25 percent of her time on shop-related work.  The remaining 75 to 80 percent of her time was spent on county road department matters and she was directed by Virgil Ferris, the county road foreman.

During times of equipment breakdown or bad weather, road crew employees stayed at the county shop and did minor repair and mechanical work on their equipment.  But Roan had no control over these employees; the county road foreman

directed their activities.

This situation continued until August 21, 1978, when the county commissioners hired a third mechanic for the shop. It was only then that Roan actually began supervising the work of at least two mechanics and devoting more than 50 percent of his time to supervisory work rather than mechanic work. Roan continued to direct 20 to 25 percent of the secretary's time. Roan's employment with Rosebud County ended on January 17, 1979.

In early February 1978, Roan filed with the Department of Labor and Industry, an overtime wage claim against the County. For the period between February 1, 1978 and March 14, 1978, the hearings officer ruled that Roan was a fulltime mechanic and was entitled to overtime for this period. For the period between March 14, 1978 and August 21, 1978, the hearings officer ruled that although Roan was a foreman-mechanic with some management functions, he was not a bona fide executive within the meaning of the regulations and was also entitled to overtime pay for this period. But for the period between August 21, 1978 and January 17, 1979, the period during which a third mechanic worked in the shop, the hearings officer ruled that Roan was a bona fide executive and was not able to collect overtime. The hearings officer ordered that Roan be paid for 277.25 overtime hours, which translated into $2,606.50, and also ordered the County to pay the statutory penalty in the same amount, as provided for in section 39-3-206, MCA.

We emphasize first that the trial court impliedly upheld the sufficiency of the evidence to establish the number of overtime hours worked. Roan introduced a calendar into evidence which contained his record of overtime hours worked during his employment with the County. In addition,

several witnesses supported his testimony that he worked overtime. The trial court, over the Court's objection, upheld the introduction of this calendar into evidence. The County now asks us to reverse the District Court on this ruling. The ruling was correct. Where the employer fails to keep adequate records of an employee's hours, it is permissible for the employee to introduce his own evidence of the hours worked. Garsjo v. Dept. of Labor and Industry (1977), 172 Mont 182, 189, 562 P.2d 473, 476. There we set out the policy on introduction of employee evidence to support a wage claim, and this case creates no violation of that policy. The testimony and evidence was clearly admissible.

The first ground on which the trial court reversed the agency ruling appears to be because Roan had not filed an overtime pay claim with the County for each pay period and because he did not claim any overtime until the end of his employment with the County. We are aware of no law (and the trial court cited none) that permits such a ruling. The trial court cited regulation M.A.C. section 24-3.14BII(38) -S14320(2) (1979), now A.R.M. 24.16.2505(2), in support of its ruling, but did not say what it is or attempt to apply it to the facts. This regulation states only when overtime must be paid by the employer, but it does not make liability for overtime compensation contingent on the employee submitting records of time worked. It does not support the trial court's ruling cutting off liability for overtime because a claim was not submitted.

Furthermore, the trial court cited and quoted from cases that do not support the trial court's ruling. See, Gahagan v. Gugler (1935), 100 Mont. 599, 52 P.2d 150; Wirtz v. Harrigill (S.D. Miss. 1963), 214 F.Supp. 813; Jackson v. Derby Oil Co. (1943), 157 Kan. 53, 139 P.2d 146. These

cases discuss recordkeeping requirements of employers and
employees and have nothing to do with the proposition for
which they are cited.

The duty of the employer to keep a record of an employee's
time is set out in regulation M.A.C. section 24-3.14BII(50)-
S14670 (1979), now A.R.M. section 24.16.61(01). The County
claims it did not keep a record of Roan's hours worked
because it did not pay overtime to salaried employees and so
there was no need to keep the records. But the duty to keep
records is that of the employer and the employer fails to
keep the records at its own peril. If it later turns out
that the employer is exempt from recordkeeping requirements,
that is one thing; but it is yet another if it turns out
that the employer thought he was exempt but in fact was not
exempt. Here, the County attempted to qualify Roan as a
bona fide executive and therefore exempted itself from
recordkeeping requirements as well as a duty to pay overtime.
But the County was wrong.

Although the issue was not raised by the parties in the
appeal to the District Court from the agency ruling, the
second ground on which the court reversed the agency order
is because "there is no evidence that the employer ever
demanded, requested or even suggested that the employee work
any overtime except for Exhibit E at p. 5 [not involved in
the issues on appeal.]" The court cited and paraphrased
regulation M.A.C. section 24-3.14BII(14)-S14040 (1979), now
A.R.M. section 24.16.1002, to the effect that "hours worked"
must be shown by the employee as hours that he "is required
to be on duty on the employer's premises." (Emphasis added.)
In effect, the District Court reversed the agency ruling
because Roan had not proved at the hearing that the County

-9-

had ordered him to work overtime, even though that was never an issue before the agency. The court ruled that Roan worked the overtime hours to suit his own convenience rather than to further the demands of his employer.

The County neither raised this issue before the hearings officer nor in its appeal to the District Court from the agency ruling. Although the District Courts do not have to blind themselves to issues not raised by the parties, we do not think this is the kind of issue on which a reversal should be grounded if it was not raised before the hearings officer or before the District Court by the County. It is unfair to permit the County to take advantage of this ruling where it never raised the issue in the first instance. We hold, therefore, that the County waived any right to take advantage of this ruling by not first raising it before the hearings officer.

Aside from the waiver holding, the record establishes that the County knew Roan was working overtime and that Roan had to work overtime to get the mechanic work done. If he did not on many occasions come to work an hour earlier in the morning and leave work an hour later in the evening, the equipment would not have been ready for the road crew when they arrived at 8:00 a.m. The demands of the job required that Roan work overtime. The county commissioners knew that Roan worked overtime and at no time directed him to stop working overtime; they were quite willing to reap the benefits of Roan's overtime work, but balked only when he asked to be paid. We cannot adhere to a rule as imposed by the District Court which arbitrarily denies overtime unless the employer expressly ordered the employee to work overtime. Such a rule would effectively defeat many legitimate overtime wage claims.

Here, two mechanics were required to maintain a fleet of 75 pieces of equipment. Roan felt that his supervisors required him to do all things necessary to keep this equipment running. His early arrival and late departure from work was his effort to fulfill the terms of his employment rather than an attempt to create his own employment contract. The third mechanic, who was hired on August 21, 1978, testified that he came to work early in the morning so he could do the mechanical work needed to have the equipment ready by 8:00 a.m. when the road crew operators came to work. To offset this 7:00 a.m. arrival, the third mechanic left work an hour earlier in the afternoon. But until the third mechanic was hired, Roan performed this early morning function as well as often remaining after 5:00 p.m. in the evening. The county commissioners did not object to Roan putting in the extra time to keep the equipment operating; their objections came only when he claimed compensation for these compensation hours. Under these circumstances, the commissioners are in no position to complain. They willingly reaped the benefit of Roan's overtime hours.

The trial court's ruling on whether Roan was a bona fide executive is also difficult to understand. It appears to be a two part ruling: First, that Roan should be judged on the "sole charge" exception set out in regulation M.A.C. section 24-314BII(2)-S1450(13) (1979), now A.R.M. section 24.16.204(13). But assuming the trial court to be correct, it did not explain why Roan fit into this "sole charge" classification. Further, the trial court neglected to apply the remaining criteria of the regulation which still must be satisfied before one can be classified as a bona fide executive.

-11-

Second, the trial court ruled that the supervision of other employees requirement in the regulation, is satisfied if the employee "had two employees under his supervision" and that it did not have to be the same two employees. It appears the court ruled that Roan supervised a mechanic and a parttime secretary, and therefore, fulfilled this requirement. The trial court properly quoted the test to be whether the employee's duties "includes the customary and regular direction of the work of two or more other employees therein . . ." But, in ruling that Roan fit the test, the court ignored another regulation further defining this test. Regulation M.A.C. section 24-3.14BII(2)-S1450(5) (1979), now A.R.M. section 24.16.204(5), requires that the employee must "customarily and regularly supervise at least two fulltime employees or the equivalent." Until August 21, 1978, when the third mechanic was hired, Roan did not meet this requirement.

Further, assuming that Roan did supervise at least "two fulltime employees or the equivalent", he still could not be classified as a bona fide executive because regulation M.A.C. section 24-3.14BII(2)-S1450(3) (1979), now A.R.M. section 24.16.204(3), further requires that this supervision be the primary duty of the employee. The testimony establishes that until August 21, 1978, Roan devoted less than 50 percent of his time to management responsibilities; that is, he devoted more than 50 percent of his time to his own work as a mechanic. Until August 21, Roan's secondary duty was management and his primary duty was work as a mechanic.

Still another reason we must reverse the District Court is because it applied the "short test" but should have applied the "long test" in determining whether Roan was a

-12-

bona fide executive. Both tests are in regulation M.A.C. section 24-3.14BII(2)-S1420 (1979), now A.R.M. section 24.16.201. The "short test" is the last paragraph of this regulation and applies if the employee is paid a salary of at least $200 per week, exclusive of board, lodging, or other facilities . . ." Although Roan made well in excess of $200 a week in salary, this "short test" is qualified by regulation M.A.C. section 24.3.14BII(2)-S1450(19)(b) (1979), now A.R.M. section 24.16.204(19)(b), which expressly exempts mechanics (among other trades) from the short test "no matter how highly paid they may be." Therefore, the short test cannot apply to Roan who is a mechanic.

We note that the hearings officer also erroneously applied the "short test" in determining that Roan was not a bona fide executive until August 21, 1978. But there was no prejudice to the County because the short test is more favorable to the employer than is the long test.

Where the long test applies, in addition to the factors set out in the short test, the employer must prove additional facts before the employee can be classified as a bona fide executive. See, Garsjo, supra, 172 Mont. at 185, 562 P.2d at 474-475, where we list the factors in the regulation that must be considered. Two factors are common to the long test and the short test. First, it must be the primary work of the employee to manage and supervise rather than to perform the work itself. Second, the employee must customarily and regularly direct two or more employees. We have already ruled that the employer failed the short test and he also must fail the long test for the same reasons. Because the employer has clearly failed these two factors in the long test, there is no need to set out and apply the additional

-13-

requirements of the long test.

Finally, we reverse the District Court's ruling that the penalty provision of section 39-6-206, MCA, does not apply. The opinion is again unclear, but seems to be _primarily_ based on the court's conclusion that the County acted in good faith and therefore the penalty cannot be imposed. The court cited and quoted from Glick v. State, Montana Dept. of Institutions (1973), 162 Mont. 82, 94, 509 P.2d 1, to the effect that an employer's demonstration of good faith will defeat imposition of the penalty. But, _Glick_ was not a case arising under Montana's wage claim statutes; rather, it was a case arising under the Fair Labor Standards Act and this Act expressly states that liquidated damages need not be awarded if the employer is found to be in good faith. On the other hand, section 39-3-206 expressly provides that the penalty "_shall_" apply if a violation is found. This statute leaves no discretion to determine whether the employer was in good faith, because even if the employer was in good faith, the finding of a violation requires imposition of the penalty.

It also _appears_ that the District Court ruled that the penalty against the County was unjustified for two more reasons. First, Roan's claim was unjustified because he originally claimed 426.75 overtime hours but at the agency hearing on June 21, 1979, he reduced his claim to 358 overtime hours. The court ruled that Roan's initial claim was an unjustified claim that there was no duty of the County to pay it and therefore the first time there was a demand for payment was on June 21, 1979, when Roan reduced his claim to 358 hours. Second, the court ruled that section 7-6-2421, MCA, provides the only method for collecting claims against a county and Roan had not filed a claim for overtime pay on a proper claim form, nor had the County rejected the claim.

-14-

Therefore, the court ruled that "the award of a penalty against the County is unjustified."

We know of no law exempting the County from having to pay a penalty for failure to pay overtime, and that is precisely the effect of the trial court's ruling. Roan properly filed an overtime claim with the Department of Labor and Industry--the Department ruled in his favor and awarded him overtime and the statutory penalty. Section 39-3-206, MCA makes no exceptions for failure to pay wages and we will not create one by holding either that the employer was in good faith or that Roan had not properly followed the procedure for processing a claim against the County. The wage and hour laws of this state do not require an employee to exhaust his remedies against the county government before he can file a wage claim with the Department of Labor and Industry or by filing a claim directly in District Court.

The decision of the District Court is reversed and the order of the Department of Labor and Industry is reinstated. This cause is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

This cause submitted prior to January 5, 1981.

-15-