FILED

March 3 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0331

DA 14-0331

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 68

OLIVER W. ARLINGTON,

        Petitioner and Appellant,

    v.

MILLER'S TRUCKING, INC.,
a Montana Corporation,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Third Judicial District,
                     In and For the County of Granite, Cause No. DV-11-11
                     Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Oliver W. Arlington (self-represented); Philipsburg, Montana

        For Appellee:

                Brian J. Smith, Kathryn S. Mahe, Garlington, Lohn & Robinson, PLLP;
                Missoula, Montana

                                Submitted on Briefs:  October 29, 2014
                                       Decided:  March 3, 2015

Filed:

                                     _____
                                            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Oliver W. Arlington appeals from an order of the Third Judicial District Court, Granite County, denying his petition for judicial review of the final agency decision issued by the Montana Department of Labor and Industry Hearings Bureau (Department). We affirm in part, reverse in part, and remand to the District Court with instructions to remand to the Hearing Officer for further proceedings consistent with this opinion.

¶2 We restate the issues on appeal as:

  *1. Did substantial evidence support the Hearing Officer's finding that Arlington and Miller's did not have an oral employment agreement guaranteeing over $60,000 per year in wages?*

  *2. Are the Hearing Officer's conclusions of law contrary to applicable wage and hour law?*

  *3. Are the Hearing Officer's factual findings clearly erroneous?*

  *4. Did the Hearing Officer abuse his discretion when he refused to admit documents pertaining to regulatory violations by Miller's?*

¶3 Arlington raises several other issues on appeal, none of which were raised below. We generally refuse to consider issues raised for the first time on appeal; therefore, we do not address those issues. *City of Missoula v. Moore*, 2011 MT 61, ¶ 13, 360 Mont. 22, 251 P.3d 679.

**PROCEDURAL AND FACTUAL BACKGROUND**

2

¶4 Arlington worked as a log truck driver for Miller's Trucking from September 2008 through August 2009. Arlington claims he is owed wages in accordance with a verbal employment agreement which guaranteed him $60,000 to $70,000 a year. Arlington also claims he is owed unpaid overtime wages.

¶5 Arlington filed a wage claim with the Department and a contested hearing was held on March 9, 2011. After the conclusion of the hearing, the Hearing Officer dismissed Arlington's claims, finding that there was no agreement for a guaranteed wage of over $60,000 annually and holding that Arlington was exempt from the Fair Labor Standards Act's (FLSA) overtime requirements and therefore was not entitled to overtime pay. The District Court affirmed that decision, and Arlington appealed. In his first appeal, we held that Arlington should have been permitted to obtain and introduce into evidence job advertisements issued by Miller's. *Arlington v. Miller's Trucking, Inc.*, 2012 MT 89, ¶ 25, 364 Mont. 534, 277 P.3d 1198 (*Arlington I*). We further held that Arlington was not an exempt employee under the FLSA. *Arlington I*, ¶ 45. Based on those holdings, we reversed and remanded for a determination of whether the ads bore on Arlington's claim that there was an employment agreement for over $60,000 per year and a determination of the amount of overtime pay owed to Arlington. *Arlington I*, ¶ 46.

¶6 On remand, Arlington was permitted to introduce Miller's job advertisements into evidence. The Hearing Officer found, however, that even in light of the ads, there was still no agreement for a guaranteed wage in excess of $60,000 per year.

¶7 Regarding his unpaid overtime claim, Arlington presented evidence of the hours he had worked, showing extensive overtime. Miller's attacked the credibility of Arlington's

3

evidence, presenting evidence suggesting Arlington's claimed hours were grossly inflated. The Hearing Officer found that Miller's was unable to keep records of Arlington's hours because Arlington failed to provide Miller's with his hours as requested at the end of each pay period. The Hearing Officer then found that Arlington's records of the hours he worked were not credible because: 1) they were internally inconsistent; 2) they were in conflict with credible testimony from other employees that Arlington was seen resting in his truck for hours that he claimed he was working; and 3) they were inconsistent with the credible testimony of other employees that it took them substantially less time to complete the same work than Arlington was claiming. The Hearing Officer accordingly found that Arlington failed to produce sufficient evidence to show the number of hours he worked.

¶8 On review, the District Court affirmed. Arlington appeals.

## STANDARDS OF REVIEW

¶9 When reviewing a district court's decision regarding the review of an agency action, the Montana Administrative Procedure Act governs this Court's review, and the scope of review is limited. *Citizens Awareness Network v. Mont. Bd. of Envtl. Rev.*, 2010 MT 10, ¶ 13, 355 Mont. 60, 227 P.3d 583. Under § 2-4-704(2)(a), MCA, a court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

    (a) the administrative findings, inferences, conclusions, or decisions are:
        (i) in violation of constitutional or statutory provisions;
        (ii) in excess of the statutory authority of the agency;
        (iii) made upon unlawful procedure;
        (iv) affected by other error of law;

4

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Section 2-4-704(2)(a), MCA.

¶10　The same standards used by the district court are applied when reviewing a district court order affirming or reversing an agency decision. *Ostergren v. Dep't of Revenue*, 2004 MT 30, ¶ 11, 319 Mont. 405, 85 P.3d 738. In contested cases, district courts review administrative decisions to determine whether the findings of fact are clearly erroneous and whether the agency determined the law correctly; we review the district court's decision in the same way. *Ray v. Mont. Tech of the Univ. of Mont.*, 2007 MT 21, ¶ 24, 335 Mont. 367, 152 P.3d 122. If a finding is not supported by substantial evidence, the court misapprehended the effect of evidence, or if this Court's review of the record convinces us a mistake has been made, a finding is deemed clearly erroneous. *Montanans v. State*, 2006 MT 277, ¶ 19, 334 Mont. 237, 146 P.3d 759.

## DISCUSSION

¶11　*1. Did substantial evidence support the Hearing Officer's finding that Arlington and Miller's did not have an oral employment agreement guaranteeing over $60,000 per year in wages?*

¶12　The Hearing Officer held that the job postings at issue in Arlington's first appeal only established that Miller's sometimes told prospective employees that drivers "typically" earned $60,000. The Hearing Officer found that even in light of the job postings, there was no oral employment agreement guaranteeing Arlington $60,000 or more per year. The owner of Miller's and several employees testified that compensation was based only on 25%

5

of the load value for every load drivers hauled and that there was no guarantee as to how much a trucker would make annually. The Hearing Officer found that testimony credible. Our review of the record establishes that there was sufficient credible evidence to support the Hearing Officer's determination.

¶13  *2. Are the Hearing Officer's determinations contrary to applicable wage and hour law?*

¶14  Arlington argues the Hearing Officer's determination that Arlington's claims should be denied in their entirety stems from a misapplication of the relevant legal standards. Arlington's arguments boil down to two contentions: first, that the Hearing Officer erred when he found that Miller's failure to keep records of Arlington's time was Arlington's fault; second, that the Hearing Officer applied a higher standard to Arlington's burden of proof to establish his hours than was actually required by relevant case law.

¶15  Both federal and Montana law require employers to pay employees overtime wages, unless an exemption applies. Under the federal Fair Labor Standards Act (FLSA) and Montana law, an employer is required to pay overtime of at least one and one-half times of an employee's regular rate of pay for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1) (2008); § 39-3-405(1), MCA. If an employer does not comply with this provision, an employee may maintain an action against the employer to recover unpaid overtime compensation, penalties, and possibly liquidated damages. 29 U.S.C. § 216(b) (2008); §§ 39-3-206 to -207, MCA.

¶16  To ensure employees are paid overtime when it is owed, both federal and state laws require employers to keep records of employee's hours. 29 U.S.C. § 211(c); Mont. Admin.

6

R. 24.16.6102(1)(g). In *Garsjo v. Dep't of Labor & Indus.*, we adopted the U.S. Supreme Court's approach to determining an employee's claims for unpaid overtime when the employer did not keep records of the employee's time. *Garsjo v. Dep't of Labor & Indus.*, 172 Mont. 182, 188–89, 562 P.2d 473, 476–77 (1977) (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946)). In *Anderson v. Mt. Clemens Pottery Co.*, the U.S. Supreme Court held that when the employer fails to record the employee's hours, the employee's records may be used to determine the amount of time worked. *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192. The employee may substantiate his claim by showing "that he has in fact performed work for which he was improperly compensated and [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Garsjo*, 172 Mont. at 188–89, 562 P.2d at 476–477 (*quoting Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192).

**Miller's Failure to Keep Records of Arlington's Hours**

¶17     The Hearing Officer's attribution of fault to Arlington for Miller's failure to keep records of his hours is contrary to established law. The Hearing Officer found that "Miller's was unable to obtain and maintain records of the hours Arlington worked because, even though Miller's requested, demanded, and required such hours from him, Arlington failed and refused to provide them." The Hearing Officer believed that, because Arlington was required to keep track of his own hours by U.S. Department of Transportation (DOT) regulations, Arlington's failure to submit hours to Miller's made him equally responsible for Miller's failure to record Arlington's hours. However, the burden to maintain accurate records falls on the employer regardless of whether the employee is responsible for recording

7

his own hours. *McGrath v. Cent. Masonry Corp.*, 2009 U.S. Dist. LEXIS 94870, 17 (D. Colo. 2009); *see also Skelton v. American Intercontinental Univ. Online,* 382 F. Supp. 2d 1068, 1071–72 (N.D. Ill. 2005) (holding that employer must maintain accurate time records notwithstanding the fact that employees were responsible for submitting time sheets and failed to submit overtime hours). "The FLSA makes clear that employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked by employees." *Skelton*, 382 F. Supp. 2d at 1071–72 (*citing* 29 U.S.C. § 211(c); *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192); *see also Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2004 U.S. Dist. LEXIS 16288, 12 (N.D. Ill. 2004) (employer cannot "escape its responsibility to pay employees for all time worked by relying solely on the hours reported on employees' time sheets"). "Indeed, the Supreme Court's reasoning in *Anderson* makes it clear that an employer should not benefit from its own failure to maintain an adequate and accurate record-keeping system." *McGrath*, 2009 U.S. Dist. LEXIS 94870 at 17.

¶18    Even though Arlington was required to keep track of his hours for purposes of DOT regulations, his failure to do so did not absolve Miller's of its duty to maintain records of his hours for purposes of wage and hour laws. The employer cannot shift the obligation to keep track of employees' hours for purposes of wage and hour laws to the employee, even when the employee is required by other regulations to keep track of his hours. If plaintiff's evidence of hours worked is inaccurate or imprecise because the employer's time-keeping practices made it difficult to ascertain the truth, the employer rather than the employee must suffer the consequences. *Walton v. United Consumers Club*, 786 F.2d 303, 314–15 (7th Cir.

1986). The Hearing Officer erred in concluding the contrary.

**Arlington's Burden of Proof**

¶19 When the employer fails to record the employee's hours, the employee's records may be used to determine the amount of time worked. The employee may substantiate his claim by proving "that he has in fact performed work for which he was improperly compensated and [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Wage Claim of Holbeck v. Stevi—W.,* 240 Mont. 121, 125–126, 783 P.2d 391, 394–95 (1989) (*quoting Anderson,* 328 U.S. at 687, 66 S. Ct. at 1192). The employee's records, however, need not be precise. *Wage Claim of Holbeck,* 240 Mont. at 126, 783 P.2d at 395.

¶20 The Hearing Officer held that "Arlington has not produced, on the entire record, sufficient evidence to show the amount and extent of the work he alleged that he performed, as a matter of just and reasonable inference." To support his claimed hours, Arlington produced calendars listing beginning and end times for each day he worked for Miller's. He further provided testimony consistent with those calendars. This was sufficient to meet Arlington's burden under the standard established by the Supreme Court in *Anderson* and adopted by this court in *Wage Claim of Holbeck.* Frequently, employees are able to offer only their own vague testimony that they worked over eight hours a day. *See e.g. McGrath,* 2009 U.S. Dist. LEXIS 94870 at 17–19 (despite defendant's contention that plaintiff's testimony was uncorroborated, speculative, and therefore insufficient, plaintiff's evidence was sufficient under *Anderson*'s "deferential standard"). The Hearing Officer held that Arlington failed to meet his burden of production because the evidence Arlington produced

9

was inaccurate and untrustworthy due to internal inconsistencies and conflicts with the credible testimony of other truckers about how much time it took them to complete substantially the same tasks.

¶21    In *Anderson*, the Supreme Court specifically contemplated that employees' evidence of the hours they worked would be imprecise and untrustworthy. "Employees seldom keep such records themselves; even if they do, the records may be and *frequently are untrustworthy*." *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192 (emphasis added). The Court nonetheless held that, because of the employer's duty to keep records of employee hours, the employee bears a light burden of production when the employer fails to keep records:

> Due regard must be given to the fact that it is the employer who has the duty under § 11 (c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed . . . . [W]here the employer's records are inaccurate or inadequate and *the employee cannot offer convincing substitutes*, a more difficult problem arises. *The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.* Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty.

*Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192 (emphasis added). In short, when an employer has failed to maintain adequate records of an employee's hours, it is expected that the employee will not be able to offer convincing substitutes for the employer's records. Moreover, whatever evidence the employee does produce can be expected to be "untrustworthy." *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192. The solution in such situations, however, is not to penalize the employee for his inability to accurately prove his hours by denying his claims in their entirety.

10

¶22 The employee may substantiate his claim by showing "that he has in fact performed work for which he was improperly compensated and [producing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687, 66 S. Ct. at 1192. Contrary to the Hearing Officer's holding, Arlington's evidence was sufficient to shift the burden to Miller's.

¶23 *3. Are the Hearing Officer's factual findings clearly erroneous?*

¶24 While Arlington met his burden to show the amount and extent of the hours he worked, an employee does not necessarily get every hour he claims simply because the employer did not keep records. Once Arlington met his burden, the burden shifted to Miller's to present evidence of the precise hours Arlington worked or to negate the reasonableness of Arlington's claimed hours. *Wage Claim of Holbeck,* 240 Mont. at 126, 783 P.2d at 395.

¶25 Although the Hearing Officer concluded Arlington had not met his burden, the Hearing Officer nonetheless held that "even if [Arlington] had provided . . . sufficient evidence, Miller's negated the reasonableness of any just inference that perhaps could otherwise have been drawn regarding the amount of time Arlington actually worked, based upon his own evidence." Thus, the Hearing Officer held that even if the burden had shifted to Miller's, Miller's effectively discredited Arlington's evidence.

11

¶26   Arlington argues, however, that even Miller's evidence established that he worked in excess of 40 hours a week, at least during some weeks. Miller's presented testimony from the owner, Tony Miller, and several drivers that it takes from 4 to 5 hours, roundtrip, to load, haul, and unload each load. According to all of Miller's witnesses, drivers were hauling 2 to 3 loads per day. According to the testimony of Miller's own witnesses, then, truckers were spending a minimum of 40 hours per week just hauling logs (4 hours per load x 2 loads per day x 5 days per week = 40 hours). However, the 40 hours represent only the time spent loading, hauling, and unloading; those hours do not account for other tasks that drivers were required to perform. Before the drivers picked up their first load on Monday, they had to pick up their trucks at Miller's base in Judith Gap. According to Tony Miller, the drive from Judith Gap to the job sites near Roundup where the first load would be picked up took 1.5 hours each Monday. Tony Miller's testimony also established that when the drivers returned their trucks on Friday, the trip from their last drop off in Laurel to Miller's base in Judith Gap took 2 hours. The initial pick up and drop off of the truck would therefore add 3.5 hours to each week. Other uncontradicted evidence established that drivers had to refuel their trucks, do a pre-trip safety inspection each day, start their truck and let it warm up before they began driving, and were required to wash their trucks once a week—all of which adds further hours to the 40 to 75 hours per week spent hauling, loading, and unloading and the 3.5 hours to pick up and drop off the truck at the base. Arlington also presented uncontested testimony that the trucks occasionally got flat tires which the drivers had to repair, and he would sometimes have to take the truck to the shop and wait while it was repaired. Thus, the record establishes that, even assuming Arlington was hauling the minimum 2 loads per day

12

in the minimum amount of time (4 hours), he was necessarily working 40 hours per week *before* including the various extraneous tasks necessarily attendant to his job.

¶27 The Hearing Officer found that Arlington averaged 2 loads per day, but nonetheless found that, "[t]aken as a whole, the evidence adduced does not support a finding of any overtime worked by Arlington, even as an approximation." The Hearing Officer's mistake arises from a misapprehension of the other truckers' testimony. The Hearing Officer noted that, "by [Arlington's] own evidence, he averaged perhaps two loads a day, which, according to their testimony, other drivers could have completed while working less than, or certainly not more than, 40 hours a week." Four witnesses testified to the amount of time it took to complete each load. Tony Miller, Trent Wolstad, and Robert Beeman testified that it took 4 to 4.5 hours for each load. Marshall Aamold testified that it took 4 to 5 hours for each load. All four witnesses were called by Miller's, and nothing in the record contradicted their testimony. Thus, the witnesses all testified that it took a minimum of 4 hours to complete a load. Therefore, as noted above, at two loads per day, Arlington would have hauled 10 loads per week, making for a minimum of 40 hours per week, before factoring in the weekly truck pick up and drop off and other incidental work.

¶28 Thus, our review of the record convinces us a mistake has been made, and the Hearing Officer's finding that Arlington never worked over 40 hours in a week is clearly erroneous. *See Montanans v. State*, ¶ 19 ("if this Court's review of the record convinces us a mistake has been made, a finding is deemed clearly erroneous").

**The Appropriate Remedy When an Employee's Claimed Hours Lack Credibility**

¶29    It is not unusual for the trier of fact to find that an employee's claimed overtime hours lack credibility. For example, in *Genao v. Blessed Sacrament School*, a federal district court made such a credibility determination under facts similar to those in this case. *Genao v. Blessed Sacrament Sch.*, 2009 U.S. Dist. LEXIS 95787 (E.D.N.Y. 2009). In *Genoa*, the plaintiff testified that he had spent 6 hours a day cleaning classrooms, all of which was overtime. *Genao*, 2009 U.S. Dist. LEXIS 95787, 22–24. A witness for the defense, however, pointed out that the work was completed by others in 3 hours per day and should not have taken the plaintiff any longer. The court found the plaintiff's claimed hours were not credible in light of the defense witness's testimony.

¶30    The appropriate remedy when an employee's claimed hours lack credibility, however, is to reduce those hours to the extent they lack credibility. This is what the Court in *Genao* did. It reduced the plaintiff's claimed overtime hours to the extent they conflicted with the credible evidence presented by the defense. *Genao*, 2009 U.S. Dist. LEXIS 95787 at 23–24. In light of *Anderson*'s directive that employee's evidence can be sufficient despite being untrustworthy, the preferred procedure is to reduce an employee's claimed hours to the extent they lack credibility, not to deny the employee's claims altogether. Similarly, where the employee's evidence is internally inconsistent, the appropriate remedy would be to discredit the greater of the employee's hour calculations, rather than determine the employee may not recover at all.

¶31    We recognize the difficulty the trier of fact faces in determining how many hours an employee worked when the employee's evidence does not reliably establish hours worked. Such difficulty is inherent in wage and hour cases, however. *See e.g. Fegley v. Higgins*, 19

14

F.3d 1126, 1133 (6th Cir. 1994) (trial court placed too heavy a burden on employee when trial court refused to extrapolate from patchwork of evidence presented by employee and denied all claims based on that evidence; employee's evidence was sufficient to shift burden, and employer's evidence suggested employee worked over forty hours a week). There are a number of ways for a trier of fact to determine compensable hours in such situations, including calculating based on the employer's documents or averaging the hours worked by other employees. *See e.g. Powell v. CompuCom Sys.*, 1996 U.S. Dist. LEXIS 3989, 5–6 (D. Or. 1996) (compelling production of employer's documents that show number of tasks employee performed for purposes of determining employee's hours); *Herman v. Hector I. Nieves Transp., Inc.*, 91 F. Supp. 2d 435, 441 (D.P.R. 2000) (establishing number of hours truckers worked by calculating average hours it took to complete a day's work based on testimony of several truckers regarding time needed to complete various tasks). An inaccurate method of computing an employee's time is preferable to denying the employee's claim for inaccurate evidence. *See e.g. Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 750–51, 9 Cal. Rptr. 3d 544, 575 (2004) (trial court's method of calculating hours inherently inaccurate, but nonetheless sufficient in light of the important policy underlying overtime laws).

¶32    The Hearing Officer may reduce the number of hours Arlington claims to have worked to the extent his claims lack credibility, and he may reduce them where there are inconsistencies. The Hearing Officer may not, however, reduce the hours below the amount that the defendant's own evidence establishes Arlington necessarily must have worked. The

clear directive in *Anderson* prevents an employee's claims from being entirely denied simply because the employee's evidence is untrustworthy and unreliable.

¶33 *4. Did the Hearing Officer abuse his discretion when he refused to admit documents pertaining to regulatory violations by Miller's?*

¶34 Under § 2-4-612(2), MCA, agencies are bound by common law and statutory rules of evidence. When reviewing an evidentiary ruling, this Court determines only whether a lower court abused its discretion. *State v. Nichols*, 2014 MT 343, ¶ 8, 377 Mont. 384, 339 P.3d 1274.

¶35 Arlington argues that the Hearing Officer should have admitted documents printed from the Federal Motor Carrier Safety Administration's website. Those documents show that Miller's was audited and scored poorly on "Hours-of-Service Compliance." On a percentage scale, with 100 being the worst score (fully out of compliance) and 0 being a perfect score (fully in compliance), Miller's scored 89.3% in a 2010 audit. It is not clear from the testimony concerning the documents what exactly it means for a company to receive a poor rating for Hours-of-Service Compliance—whether it means truckers' hours are not being recorded, the number of hours they are driving exceeds regulations, or something else.

¶36 Arlington apparently sought to introduce the evidence to show that Miller's employees sometimes worked hours that exceeded federal hours limitations for truckers— which he contends are more than 40 hours per week—and to show that Miller's knew its truckers were working over 40 hours a week. Given that the document doesn't show that the violations were for drivers exceeding maximum hours, it could not establish that Miller's

16

truckers were exceeding hours-of-service regulations or that Miller's was aware of this. Further, to the extent that it conceivably could establish that Miller's truckers were frequently working over 40 hours a week, and Miller's knew this, it would be duplicative of Tony Miller's own testimony that drivers were hauling 2 to 3 loads a day at 4 to 4.5 hours per load. At most, the document was grounds for impeaching Miller's witnesses, and the Hearing Officer allowed it to be used for that limited purpose. We therefore hold that it was not an abuse of discretion for the Hearing Officer to exclude the evidence of Miller's lack of compliance with hours-of-service regulations.

## CONCLUSION

¶37 Substantial evidence supported the Hearing Officer's finding that there was no verbal agreement guaranteeing Arlington over $60,000 per year, and the Hearing Officer did not abuse his discretion when he refused to admit documents showing Miller's failed to comply with hours-of-service requirements. We therefore affirm the District Court's determinations as to those issues. However, the Hearing Officer applied a heavier burden to Arlington than the standard articulated by *Anderson* and *Wage Claim of Holbeck*, and he erroneously found that Arlington never worked more than 40 hours in any week. We therefore reverse and remand to the District Court with instructions to remand to the Hearing Officer for determination, consistent with this opinion, of the overtime owed Arlington. On remand, the Hearing Officer is free to further develop the record and employ any reasonable means to determine Arlington's hours. Finally, we note that Arlington requests on appeal that his overtime pay be calculated according to a salary of $60,000 per year. However, because Arlington was unable to prove an agreement for pay of $60,000 per year, any overtime pay

17

will need to be calculated pursuant to the regulations governing determination of the hourly rate for employees paid on a non-hourly basis.  Mont. Admin. R. 24.16.2512(2).

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER