FILED

04/03/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0383

DA 17-0383

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 70

DANIELLE JONES,

        Petitioner, Appellant and Cross-Appellee,

    v.

ALL STAR PAINTING INC.,

        Respondent, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis And Clark, Cause No. BDV 16-742
                Honorable Mike McMahon, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Ryan Shaffer, Robert L. Stepans, Meyer, Shaffer, & Stepans, PLLP,
                Missoula, Montana

        For Appellee:

                T. Thomas Singer, Axilon Law Group, PLLC, Billings, Montana

                        Submitted on Briefs:  January 10, 2018

                                  Decided:  April 3, 2018

Filed:

                                      Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Danielle Jones worked as a house painter for All Star Painting, Inc. during the summer of 2014. Two months after quitting her job, she filed a complaint with the Montana Human Rights Bureau (HRB), alleging that the company's owner, Norman Hodges, had sexually harassed her at work. After a contested hearing, the Hearing Officer granted judgment in favor of All Star Painting. Both the Human Rights Commission (HRC) and First Judicial District Court, Lewis and Clark County, upheld the Hearing Officer's decision. On appeal to this Court, Jones argues that the District Court erred in upholding the HRB's decision because it was based on an incorrect application of the rules of evidence. She further appeals the District Court's order dismissing Hodges as a respondent to the complaint. All Star Painting cross-appeals the District Court's denial of its motion for attorney fees.

¶2 We reverse in part and affirm in part. Given our resolution of Jones's appeal, we do not reach the cross-appeal issue of attorney fees.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Hodges is the sole owner of All Star Painting, a business that paints the exteriors of houses for private residential customers. The company runs one painting crew with three or four crew members. Hodges hires the crew members. Jones worked for All Star Painting for approximately six weeks from the end of July 2014 to the first or second week of September 2014. Marvin Thomas was the crew supervisor during the time Jones worked for All Star.

2

¶4  Two months after leaving her position at All Star Painting, Jones filed a complaint with the HRB alleging that All Star Painting discriminated against her on the basis of gender. She claimed that Hodges created a hostile work environment by subjecting her to sexual harassment in violation of § 49-2-303, MCA. Jones alleged that Hodges began harassing her on her second or third day of work and that the harassment occurred on a nearly daily basis.

¶5  A Hearing Officer presided over a contested hearing in November 2015. Both Jones and Hodges testified at the hearing, and each called additional witnesses. Jones testified that Hodges made comments of a sexual nature and touched her on several occasions without her permission or consent at project sites. She testified that on one occasion Hodges put her paycheck down the back of her pants and into her underwear while she was bending over folding a tarp. She testified that she quit her job with All Star Painting after Hodges thrust a chicken bone in and out of the back of her pants against her skin as she sat on the ground eating lunch.

¶6  In addition to her own testimony, Jones called five other witnesses at the hearing. All Star repeatedly objected to their testimony as hearsay. The Hearing Officer allowed the witnesses to testify, explaining that although she was allowing "some leeway," if the witnesses testified to something they had not personally observed she would "take it for what it's worth."

¶7  Jones's husband, Ryan Jones, testified about his observations of Jones during the time she was working for All Star. He described Jones as "a lot more irritable," "very sensitive and upset," and "distraught." Her roommate at the time, Dustin Ritts, testified

3

that while Jones was working for All Star she "was very distraught and unhappy with the way she was being treated at work" and was "mad constantly, complaining about how she's being treated." He stated that Jones did not complain about other jobs she had while living with him. Jones's father-in-law, Jeffrey Jones, testified that Jones was upset about inappropriate behavior at work while she was employed by All Star. Stacey Hemming, an insurance agent who sold disability policies to Jones and Thomas when they attempted to start a painting business together, explained that she was under the impression from both Thomas and Jones that there was harassing or inappropriate behavior toward women occurring at All Star.

¶8　Finally, Jones called the HRB investigator who had initially reviewed her complaint, Dennis Unsworth. Unsworth testified that Hodges told him that All Star had never had a complaint with the Better Business Bureau (BBB). He testified that, contrary to Hodges's denial, Unsworth found a complaint that had been lodged with the BBB only a few months before and that Hodges had responded to the complaint.

¶9　All Star called fifteen witnesses at the hearing, including Hodges. Hodges denied Jones's allegations of sexual harassment and claimed that the incidents she described did not occur. Nine of All Star's witnesses were homeowners from seven separate painting projects All Star had completed during the summer of 2014. Only four of the homeowners from three painting projects recognized Jones. None of the homeowners witnessed any inappropriate conduct by Hodges toward Jones. All Star also called three character witnesses—Maddy Main, Patricia Berlanga, and Claire Oravsky—who knew Hodges

through dance classes he had taken. All three testified over Jones's objection about Hodges's respectful treatment of women and his character for truthfulness.

¶10 Thomas testified on behalf of All Star. He stated that he had not witnessed any inappropriate conduct toward Jones while working for All Star and that Jones had not complained of inappropriate conduct to him. Thomas's testimony contradicted what he previously told Unsworth. Further, Hodges testified that Thomas had lied in his application for unemployment benefits when he quit working for All Star in 2014. Thomas returned as the crew supervisor for All Star for the 2015 season and testified that he planned to work for All Star during the 2016 season.

¶11 All Star also called Regina Robinson to testify. Robinson was Jones's supervisor at Yellowstone River of Care where Jones worked as a Certified Nursing Assistant (CNA) after leaving All Star Painting. Robinson testified that Jones said that she had a CNA license in Arizona, but that Jones never provided her with proof of the license. Robinson testified that she believed Jones was dishonest about her CNA license.

¶12 In her written decision, the Hearing Officer explained that she admitted and considered the testimony from three of All Star's witnesses—Main, Berlanga, and Oravsky—and three of Jones's witnesses—Ryan Jones, Jeffrey Jones, and Ritts—only to the extent it addressed Hodges's and Jones's character for truthfulness. She then explained that evidence presented at the hearing called into question the credibility of both Jones and Hodges: Jones was not truthful about whether she had a CNA license and Hodges was not truthful about whether the BBB had received complaints about All Star Painting. She found Thomas's testimony to be wholly unreliable and not credible, and she gave his

5

testimony no consideration. She determined, however, that the testimony of the homeowners bolstered Hodges's account: none of the homeowners who testified had witnessed any inappropriate conduct, and Jones had told the HRB that two homeowners had witnessed the harassment. On the basis of the homeowners' testimony, she concluded that Hodges's testimony was more credible than Jones's testimony. She determined that Jones had not met her burden of persuasion because "Jones'[s] uncorroborated testimony regarding Hodges'[s] actions was not sufficient to prove a prima facie case of discrimination based on gender." She granted judgment in favor of All Star.

¶13 The HRC affirmed the Hearing Officer's decision, and Jones filed a petition for judicial review. The District Court dismissed Jones's petition for judicial review, affirming the judgment in favor of All Star Painting and dismissing Hodges from the action. It denied All Star's motion for attorney fees.

## STANDARDS OF REVIEW

¶14 The Montana Administrative Procedures Act (MAPA) governs actions before the HRC. *Blaine Cnty. v. Stricker*, 2017 MT 80, ¶ 16, 387 Mont. 202, 394 P.3d 159. MAPA provides the standard of judicial review of agency decisions:

> The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
> (a) the administrative findings, inferences, conclusions, or decision are:
> (i) in violation of constitutional or statutory provisions;
> (ii) in excess of the statutory authority of the agency;
> (iii) made upon unlawful procedure;
> (iv) affected by other error of law;

6

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Section 2-4-704(2), MCA. Under this standard, a reviewing court may not substitute its judgment for that of the administrative agency. The court instead reviews the whole record to determine whether the agency's findings of fact are clearly erroneous and whether its determinations of law are correct. *Arlington v. Miller's Trucking, Inc.*, 2015 MT 68, ¶ 10, 378 Mont. 324, 343 P.3d 1222; *Total Mech. Heating & Air Conditioning v. Emp't Relations Div.*, 2002 MT 55, ¶ 23, 309 Mont. 84, 50 P.3d 108. The same standard of review applies to both the district court's review of the agency decision and this Court's review of the district court's decision. *Blaine Cnty.*, ¶ 16; *Arlington*, ¶ 10. A finding is deemed clearly erroneous if it is not supported by substantial evidence, if the agency misapprehended the effect of evidence, or if this Court's review of the record convinces us a mistake has been made. *Arlington*, ¶ 10.

**DISCUSSION**

¶15     *1. Whether the District Court properly dismissed Jones's Petition for Judicial Review.*

¶16     Jones argues that the Hearing Officer's written decision was arbitrary and capricious because the decision ignored the testimony from Ryan Jones, Jeffrey Jones, Dustin Ritts, and Stacey Hemming, all of whom corroborated Jones's testimony. She challenges the Hearing Officer's finding that "Jones'[s] uncorroborated testimony regarding Hodges'[s] actions was not sufficient to prove a prima facie case," arguing that it is not supported by the record and is a clear mistake. Jones argues that the District Court impermissibly

7

speculated when it ruled that the Hearing Officer properly ignored the witnesses' testimony because it "lacked foundation, [was] inadmissible hearsay, or [was] otherwise barred by law." She contends that the Hearing Officer did not articulate any such reasoning in her decision.

¶17 All Star counters that the Hearing Officer did not ignore these witnesses; she specifically stated in the written decision that she considered the testimony of three witnesses—Ryan Jones, Jeffrey Jones, and Dustin Ritts—to the extent it addressed "the truthfulness or non-truthfulness of Hodges and Jones." All Star argues that the only portions of the four witnesses' testimonies that were not inadmissible hearsay were the portions about Jones's character for truthfulness. All Star argues that the Hearing Officer stated at the hearing that she would consider only admissible testimony in her decision. It contends that the District Court therefore did not speculate in its order upholding the Hearing Officer's decision that the evidence not considered was inadmissible. Finally, All Star argues that substantial evidence supports the Hearing Officer's decision and that the decision was based on correct legal rulings on the admissibility of the testimony.

¶18 The Montana Human Rights Act (MHRA) prohibits discrimination in the terms and conditions of employment on the basis of sex. *See* § 49-2-303(1)(a), MCA. The creation of a hostile work environment due to sexual harassment is a violation of the MHRA. *Stringer-Altmaier v. Haffner*, 2006 MT 129, ¶¶ 17-19, 332 Mont. 293, 138 P.3d 419. To establish a prima facie case, the complaining party must demonstrate: (1) that the party is a member of a protected class; (2) that the party was subjected to offensive conduct that amounted to actual discrimination because of sex; (3) that the conduct was unwelcome;

8

and (4) that the sexual harassment was so severe or pervasive to alter the conditions of employment and create an abusive working environment. *Campbell v. Garden City Plumbing & Heating, Inc.*, 2004 MT 231, ¶¶ 15-19, 322 Mont. 434, 97 P.3d 546. The complaining party has the burden of persuasion. Section 26-1-402, MCA.

¶19 The Hearing Officer concluded: "Jones'[s] uncorroborated testimony regarding Hodges'[s] actions was not sufficient to prove a prima facie case of discrimination based on gender. Therefore, Jones has not shown All Star subjected her to a hostile work environment due to Hodges'[s] actions." All Star rightly does not argue that the MHRA requires corroborating evidence to make out a prima facie case, nor does it cite any cases in which a court has so held.

¶20 This Court has "left the door open for plaintiffs to take what evidentiary route thought best" to make their case for actual discrimination. *Campbell*, ¶ 17. "Prima facie" means "sufficient to establish a fact or raise a presumption unless disproved or rebutted." *Black's Law Dictionary* 1382 (Bryan A. Garner, ed., 10th ed. 2014); *see also* § 26-1-102(6), MCA ("'Prima facie evidence' is that which proves a particular fact until contradicted and overcome by other evidence."). A "prima facie case" requires "a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Black's Law Dictionary* 1382 (Bryan A. Garner ed., 10th ed. 2014). The direct evidence of one credible witness is sufficient to prove a fact. *See* § 26-1-301, MCA; *In re Marriage of Kovash*, 270 Mont. 517, 523, 893 P.2d 860, 864 (1995) ("The testimony of one witness is generally sufficient for the proof of any fact."). If the Hearing Officer believed her, Jones's uncorroborated testimony was sufficient to establish all the

elements of a hostile work environment due to sexual harassment. Although the Hearing Officer may determine that All Star successfully rebutted or undermined Jones's testimony—and Jones therefore failed to carry her *burden of persuasion*—Jones established a prima facie case through her own testimony and was not required by the statute or our case law to produce corroborating evidence to make out a prima facie case.

¶21 Beyond the misstatement of MHRA's proof requirements, the above-quoted language from the Hearing Officer's decision highlights another analytical flaw. All Star is correct that much of the testimony from Jones's witnesses was inadmissible hearsay. All Star is not correct, however, in its claim that, once the Hearing Officer excised the inadmissible portions of the testimony, only the statements regarding Jones's character for truthfulness remained.

¶22 Witnesses may testify about their personal knowledge of a matter. *See* M. R. Evid. 602. Hearsay—an out-of-court statement offered for the truth of the matter asserted—is generally inadmissible unless an exception applies. M. R. Evid. 802. "The term 'hearsay,' as used in the law of evidence, signifies all evidence which is not founded upon the personal knowledge of the witness from whom it is elicited." *Goodover v. Lindey's, Inc.*, 255 Mont. 430, 442, 843 P.2d 765, 772 (1992). Ryan Jones, Jeffrey Jones, and Dustin Ritts all testified that they *personally observed* that Jones was upset about things at work during the time of the alleged conduct. Ritts further testified that Jones complained constantly when she worked for All Star and that she did not complain when employed elsewhere. This testimony is not hearsay, but rather the personal observations of the witnesses regarding Jones's demeanor and reactions during the time the alleged harassment was occurring. *See*

10

M. R. Evid. 602. It is "founded upon the personal knowledge of the witness[es]" who observed Jones's demeanor from their interactions with her. *See Goodover*, 255 Mont. at 442, 843 P.2d at 772. If the Hearing Officer completely disregarded this portion of the testimonies as inadmissible hearsay, her decision was "affected by other error of law." *See* § 2-4-704(2)(a)(iv), MCA.

¶23 On the other hand, if the Hearing Officer considered all the admissible testimony from these witnesses, she misapprehended the effect of that evidence. The Hearing Officer considered the testimony of Ryan Jones, Jeffrey Jones, and Dustin Ritts only to the extent that it addressed Jones's truthfulness or non-truthfulness. She assigned identical weight to three witnesses from All Star who testified as to Hodges's respectful treatment of women in other situations. The Hearing Officer rightly recognized, however, that Hodges's treatment of those women was not relevant to Jones's discrimination claim: none of them had been Hodges's subordinate employee. The Hearing Officer instead considered the witnesses only as character witnesses. But in giving these six witnesses identical consideration, she failed to consider the relevant portions of testimony from Jones's witnesses as corroborating, circumstantial evidence of the alleged harassment.

¶24 "'Circumstantial evidence' is that which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence." Section 26-1-102(1), MCA. Circumstantial evidence, unlike direct evidence, requires additional reasoning from the factfinder to reach the desired conclusion. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 185, 1001 (7th ed. 2013). "'Corroborative evidence' is additional evidence of a different

11

character to the same point." Section 26-1-102(3), MCA. Thus, circumstantial evidence is corroborative if it supports an inference that an element of the action occurred. *Cf. City of Helena v. Strobel*, 2017 MT 55, ¶ 18, 387 Mont. 17, 390 P.3d 921. "An item of evidence, being but a single link in the chain of proof, need not prove conclusively the proposition for which it is offered. . . . It is enough if the item could reasonably show that a fact is slightly more probable than it would appear without that evidence." *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 185, 999 (7th ed. 2013).

¶25 Ryan Jones, Dustin Ritts, and Jeffrey Jones each testified to Jones's demeanor at the time she worked for All Star. They each testified that she was upset, and each attributed Jones's demeanor to her workplace environment. Though they could not offer eyewitness testimony to prove any alleged specific acts, their testimony supported Jones's testimony that her work with All Star was causing her distress during this time. Their testimony does not go simply to Jones' character for truthfulness, but supports an inference that she was being harassed at work.

¶26 The Hearing Officer failed to recognize the corroborative nature of this evidence. Consequently, she did not explain the weight, if any, that she gave the testimony of Jones's witnesses as admissible corroborating evidence. This oversight in the analysis calls into question the Hearing Officer's statement that she found Jones and Hodges on equal footing when it came to credibility. She ultimately determined Hodges's account was more credible because the testimony from nine homeowners corroborated Hodges's account. She found incorrectly that the testimony from the nine homeowners represented eight separate painting projects, as the record shows that their testimony represented only seven

separate painting projects. And she did not explain how their testimony overcame that from Jones's witnesses when all the homeowners acknowledged that they were not in a position to see everything that occurred on the job site.

¶27 Without further explanation from the Hearing Officer for her decision, we are left to speculate whether the Hearing Officer made a mistake of law in refusing to consider admissible portions of testimony from Jones's witnesses or whether she committed clear error in her fact finding by misapprehending the effect of the admissible corroborative testimony. Under MAPA, we may not substitute our judgment for that of the agency as to the weight of the evidence on questions of fact. *See* § 2-4-704(2), MCA. Given that the Hearing Officer granted judgment in favor of All Star because the homeowners' testimony supported Hodges's account, we are unable to conclude whether the Hearing Officer would have decided the case in the same manner had she properly considered all the corroborating evidence before her. We therefore reverse the District Court's order dismissing Jones's petition for judicial review. We reverse the agency's decision and remand the case for further proceedings. *See* § 2-4-704(2), MCA. On remand, the HRB is directed to consider the testimony of Jones's witnesses in accordance with the standards set forth in this Opinion, enter findings of fact explaining its review of the evidence, and explain the effect, if any, this review has on its conclusions of law.

¶28 *2. Whether the District Court properly dismissed Hodges as a party to the action.*

¶29 Before the hearing, the Hearing Officer granted Jones's motion to add Hodges to the case caption under M. R. Civ. P. 15. The District Court reversed that ruling and dismissed Hodges as a party to the action. Jones argues that the District Court erred

13

because, under the MHRA, Hodges is an appropriate respondent as an "agent of the employer." *See* § 49-2-101(11), MCA; *Fandrich v. Capital Ford Lincoln Mercury*, 272 Mont. 425, 901 P.2d 112 (1995). Further, she contends that the Hearing Officer properly ordered an amendment to the pleadings, because, even though Hodges was not listed as a respondent in her initial complaint, Jones named Hodges as her harasser, provided his address, and described the particulars of his alleged discriminatory practice as required under § 49-2-501(3), MCA.

¶30 All Star counters that Hodges was never properly joined to the action under the Montana Rules of Civil Procedure. All Star contends that the Hearing Officer improperly granted the motion to add Hodges to the caption under M. R. Civ. P. 15, because Jones did not move to amend the complaint to meet the requirements for joinder of parties under M. R. Civ. P. 20. Alternatively, All Star argues that Hodges is not an "employer" under § 49-1-101(11), MCA, because the Court in *Fandrich* interpreted "employer" in the MHRA in a way that is completely inconsistent with federal employment discrimination law.

¶31 The proceedings for contested hearings before the HRB are governed by the applicable portions of the Montana Rules of Civil Procedure. *See* § 49-2-505(3)(a), MCA. M. R. Civ. P. 15(a)(2) permits a hearing officer to allow leave to amend a complaint more than 21 days after service. *See also* Admin. R. M. 24.8.752(4). M. R. Civ. P. 20(a)(2)(A) states that multiple defendants may be joined in a cause of action if "any right to relief is asserted against them jointly, severally, or in the alternative."

¶32 Jones's initial complaint listed only All Star as the respondent. In her preliminary pre-hearing statement before the Hearing Officer, she requested relief from All Star, but did not request relief from Hodges personally. After filing her pre-hearing statement, Jones moved for leave to amend the caption of the case to include Hodges. She never sought, however, to amend the charging documents to assert a right to relief against Hodges as required under M. R. Civ. P. 20. Thus, Hodges was never properly added as a party under M. R. Civ. P. 20. We affirm the District Court order dismissing him as a party to the action.

## CONCLUSION

¶33 The District Court's denial of Jones's petition for judicial review is reversed. We remand the case to the Human Rights Bureau for further proceedings in accordance with this Opinion. The District Court's dismissal of Hodges as a party to the action is affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR