Justice Ingrid Gustafson delivered the Opinion of the Court.
***135 ¶1 KB Enterprises, LLC, d/b/a Snappitz (KB) appeals the Order Affirming Final Agency Decision Issued by the Montana Human Rights Commission issued by the Third Judicial District Court, Anaconda-Deer Lodge County, on September 21, 2018. We affirm.
¶2 We restate the issue on appeal as follows:
Did the District Court err in affirming the Final Agency Decision of the Montana Human Rights Commission?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 KB owns and operates a fabrication business in Anaconda which makes insulated pipe fittings. Appellee Jerry James Bright (Bright) is an African American man who worked as a fabricator at KB from January 2015 until April 2016. Dave Gustafson (Gustafson)[1] was Bright's supervisor during Bright's employment at KB. On four occasions-in March 2015, June 2015, November 2015, and April 2016-Gustafson either directly called or referred to Bright as a "nigger" while the two were at work. Bright quit his job at KB following the April 2016 incident with Gustafson and filed a racial discrimination complaint against KB with the Montana Department of Labor and Industry's Human Rights Bureau (HRB).
¶4 On April 20 and 21, 2017, Office of Administrative Hearings Hearing Officer David A. Scrimm held a contested case hearing on the matter. Bright, Gustafson, Kevin Beck, Josh Blaz, Travis Scholler, and ***136 Misty Franklin testified at the hearing. On October 10, 2017, the Hearing Officer issued his Hearing Officer Decision and Notice of Issuance of Administrative Decision, which found that Bright was subjected to racial discrimination in his employment by KB. The Hearing Officer awarded Bright $ 18,357.70 in lost wage damages and $ 20,000.00 in emotional distress damages.
¶5 KB appealed the Hearing Officer's decision to the Montana Human Rights Commission (HRC). After briefing and a hearing, the HRC adopted the Hearing Officer's decision in full as its Final Agency Decision. KB then filed a petition for judicial review in the *501 District Court. After briefing and a hearing, the District Court upheld the HRC's Final Agency Decision and dismissed KB's petition for judicial review. KB appeals.
STANDARD OF REVIEW
¶6 The Montana Administrative Procedures Act (MAPA) governs actions before the HRC. Bollinger v. Billings Clinic , 2019 MT 42, ¶ 26, 394 Mont. 338, 434 P.3d 885. MAPA provides the standard of judicial review of agency decisions:
The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
(a) the administrative findings, inferences, conclusions, or decision are:
(i) in violation of constitutional or statutory provisions;
(ii) in excess of the statutory authority of the agency;
(iii) made upon unlawful procedure;
(iv) affected by other error of law;
(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 2-4-704(2), MCA. Under this standard of review, which applies to both the district court's review of the agency decision and this Court's review of the district court's decision, a reviewing court may not substitute its judgment for that of the administrative agency, but instead reviews the entire record to determine if the agency's findings of fact are clearly erroneous and its conclusions of law are correct. Bollinger , ¶ 26. A finding is clearly erroneous if it is not supported by ***137 substantial evidence, if the agency misapprehended the effect of evidence, or if this Court's review of the record convinces us a mistake has been made. Jones v. All Star Painting Inc. , 2018 MT 70, ¶ 14, 391 Mont. 120, 415 P.3d 986 (citing Arlington v. Miller's Trucking, Inc. , 2015 MT 68, ¶ 10, 378 Mont. 324, 343 P.3d 1222 ).
DISCUSSION
¶7 Did the District Court err in affirming the Final Agency Decision of the Montana Human Rights Commission?
¶8 KB asserts that the Hearing Officer made numerous incorrect findings of fact in this case, and that the HRC and District Court both wrongly upheld the Hearing Officer's decision. In support of this contention, KB essentially asks this Court to believe the testimony of its witnesses over that of Bright's witnesses. The basic facts of this case are that Bright testified that Gustafson called him a "nigger" on four separate occasions during his employment at KB, Gustafson testified that he did not, and the other witnesses generally testified that they did not hear it. The Hearing Officer received this testimony, weighed the credibility of the witnesses, and determined that Gustafson did in fact call Bright a "nigger" on those four occasions.
¶9 "Administrative findings of fact may not be disturbed on judicial review if they are supported by substantial evidence in the record." Peretti v. Dep't of Revenue , 2016 MT 105, ¶ 18, 383 Mont. 340, 372 P.3d 447. Substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. Peretti , ¶ 18 (citing Taylor v. State Comp. Ins. Fund , 275 Mont. 432, 437, 913 P.2d 1242, 1245 (1996) ). "As long as we determine that substantial credible evidence exists to support the findings of the trier of fact, we may not re-weigh the evidence, but must instead defer to the Hearing Examiner." Benjamin v. Anderson , 2005 MT 123, ¶ 37, 327 Mont. 173, 112 P.3d 1039. "A hearing examiner, when one is used, is in the unique position of hearing and observing all testimony entered in the case.... The findings of the hearing examiner, especially as to witness credibility, are therefore entitled to great deference." Benjamin , ¶ 37 (quoting Moran v. Shotgun Willies, Inc. , 270 Mont. 47, 51, 889 P.2d 1185, 1187 (1995) ).
¶10 KB objects to a litany of the Hearing Officer's findings of fact, highlighting *502 conflicting testimony given by the witnesses in this matter. Findings of Fact Nos. 11-17 each concern the four separate incidents where Gustafson called Bright a "nigger" while at work. Finding of Fact No. 23 relatedly concerns Misty Franklin's testimony ***138 that she did not remember any incidents of Gustafson using the "N-word." Substantial credible evidence exists to support each of these Findings of Fact as noted by the District Court in its Order. Bright testified to each instance happening and Gustafson denied each instance. The Hearing Officer is in the best position to determine the credibility of witness testimony and his determination that Bright's testimony was true is entitled to great deference. Benjamin , ¶ 37. Findings of Fact Nos. 11-17 and 23 are not clearly erroneous.
¶11 Finding of Fact No. 18 concerns Gustafson admitting to using the "N-word" at work in 2012, when speaking with William Sanders, an African American man who was then employed by KB. Finding of Fact No. 18 further notes that Gustafson had been accused of being a racist by Kevin Beck's father, Dave Beck, when he was the owner of the company. KB claims that this Finding of Fact is clearly erroneous because Dave Beck was no longer an owner of the company when Dave Beck called Gustafson a racist, however Gustafson testified that he was accused by Dave Beck of being a racist "during [his] employment at KB Enterprises" and "after the November 30th incident." While Dave Beck was no longer the owner of KB in 2015, the testimony of Gustafson does not preclude that Dave Beck did call Gustafson a racist during a period when he was the owner of the company. Dave Beck founded KB, was an owner for a period of time, and eventually gave control to Kevin Beck. Dave Beck and Kevin Beck had multiple meetings with Gustafson over the years regarding Gustafson's racist statements. Even after ceding control of KB to Kevin Beck, Dave Beck maintained apparent authority at the company-he could call all-hands employee meetings and was involved in the meetings with Kevin Beck and Gustafson regarding Gustafson's use of the "N-word" at work. Finding of Fact No. 18 is not clearly erroneous, because even though there is not a preponderance of the evidence that Dave Beck called Gustafson a racist while he was the owner of KB, substantial evidence is found in the record to support the Hearing Officer's conclusion that he did. Peretti , ¶ 18.
¶12 Finding of Fact No. 19 concerns Bright's admitted use of the term "nigga" as a term of endearment with other African American employees at work. KB claims that Bright can therefore not claim to be offended when his direct supervisor, who is not an African American, calls him a "nigger." This argument is nonsensical and ignores years of cultural history. See Daniel v. Wayans , 8 Cal. App. 5th 367, 390, 213 Cal.Rptr.3d 865 (2017) ("Nigga is not an unambiguous racial epithet in today's world, especially when used intraracially[.]") Bright testified that he was offended by Gustafson, a non-African American, ***139 calling him a "nigger," but used the diminutive "nigga" himself as a non-offensive greeting with fellow African Americans. There is a clear difference between African Americans using the term "nigga" amongst one another and a non-African American calling an African American man a "nigger." See generally Bailey v. Binyon , 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("The use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination per se .") Finding of Fact No. 19 is not clearly erroneous.
¶13 Findings of Fact Nos. 26 and 35 concern Bright's alleged failure to mitigate his damages by twice refusing KB's offers to return to work at KB after Bright quit in response to Gustafson's repeated racial abuse. The Hearing Officer found that at the time of each offer, Gustafson was still employed at KB. Substantial evidence supports this Finding of Fact, as Gustafson testified that he did not leave his job at KB until the end of June, while both of KB's offers to Bright were made in May. Bright obtained employment prior to the second offer, at an admittedly lower wage than he made at KB, but it is reasonable for him to reject KB's offers of reemployment at a company which still employs a supervisor who had repeatedly branded him with racial slurs. KB could toll the accrual of damages by offering *503 Bright his job without conditions attached. Martinell v. Montana Power Co. , 268 Mont. 292, 323, 886 P.2d 421, 440 (1994). It did not do so in this case by offering Bright a job being supervised by Gustafson. KB's offer of reemployment to Bright was therefore conditioned on Bright possibly being subject to even more racial abuse. Findings of Fact Nos. 26 and 35 are not clearly erroneous.
¶14 Finding of Fact No. 32 concerns Bright being hurt by being called a "nigger" by Gustafson. Bright testified to how these experiences hurt him. "The experience of being called 'nigger,' 'spic,' 'Jap,' or 'kike' is like receiving a slap in the face. The injury is instantaneous." State v. Hoshijo , 76 P.3d 550, 565 (Haw. 2003) (quoting Taylor v. Metzger , 152 N.J. 490, 706 A.2d 685, 691 (1998) ). It is abundantly clear that throughout the history of the United States, the term "nigger" has been used as a vicious racial slur to degrade and demean African Americans. The Hearing Officer's Finding of Fact No. 32 that Bright was hurt by this experience is supported by substantial evidence and not clearly erroneous.
¶15 Finding of Fact No. 33 concerns Kevin Beck being aware of Gustafson's racist conduct toward Bright. Bright reported that Gustafson was using "the (N) word" in a written statement to KB. KB admits that it received the statement. Kevin Beck was therefore aware of Bright's allegations and did nothing to protect Bright from ***140 Gustafson's racist abuse. Finding of Fact No. 33 is not clearly erroneous.
¶16 KB asserts that Finding of Fact No. 20 regarding Josh Blaz witnessing Gustafson using the "N-word" toward Bright is clearly erroneous because not all of Blaz's testimony at the hearing was truthful. "The jury is to be instructed by the court on all proper occasions that ... a witness false in one part of the witness's testimony is to be distrusted in others[.]" Section 26-1-303(3), MCA. KB claims that the Hearing Officer should have disregarded Blaz's testimony due to this statute. Section 26-1-303, MCA, is, by its plain language, a jury instruction statute and therefore irrelevant to the proceedings before the Hearing Officer in this case. The Hearing Officer is entitled to judge witness credibility and "the findings of the hearing examiner, especially as to witness credibility, are ... entitled to great deference." Benjamin , ¶ 37. Finding of Fact No. 20 is not clearly erroneous.
¶17 Finding of Fact No. 34 concerns the Hearing Officer's conclusion that the racial harassment of Bright was sufficiently severe so as to alter the conditions of Bright's employment. There is no precise test to determine whether instances of discriminatory conduct have created a work environment that it so hostile or abusive that it alters the conditions of an employee's employment-each case must be judged by looking at all the circumstances from the perspective of a reasonable person. Harris v. Forklift Sys. , 510 U.S. 17, 21-22, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993). "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." McGinest v. GTE Serv. Corp. , 360 F.3d 1103, 1116 (9th Cir. 2004) (quoting Rodgers v. Western-Southern Life Ins. Co. , 12 F.3d 668, 675 (7th Cir. 1993) ). There is simply no question that the use of the word "nigger" by a supervisor toward an African American employee objectively creates a hostile and abusive working environment that alters the conditions of that employee's employment. Kevin Beck, the owner of KB, testified to as much during the HRB hearing. Finding of Fact No. 34 is not clearly erroneous and to the extent that it is a conclusion of law, it is correct.
¶18 Finally, KB objects to Findings of Fact Nos. 36 and 41, which concern the Hearing Officer's determination that Bright is entitled to damages. Specifically, Finding of Fact No. 41 awarded Bright $ 20,000.00 for emotional distress. KB claims that this award is excessive and out of line with previous cases, and cites several decisions with lower damages awards in its briefing-though quite notably none where a plaintiff was subjected to the slur used by Gustafson ***141 in this case. KB asserts that any emotional distress award should be "directly in line *504 with" Johnson v. Hale , 13 F.3d 1351 (9th Cir. 1994). In Johnson , the plaintiffs were two African American men who were refused an apartment in Billings by a landlord who stated that her husband would not allow her to rent to "Negro men." Johnson , 13 F.3d at 1352. The Ninth Circuit Court of Appeals set aside the district court's de minimis emotional distress award of $ 125.00 to each plaintiff and remanded to the district court to award each plaintiff "not less than $ 3,500 plus costs and attorneys' fees." Johnson , 13 F.3d at 1354. The Ninth Circuit noted "[t]hat sum would appear to be the minimum that finds support in recent cases and takes into account inflation, the purpose of [ 42 U.S.C.] § 1982, and other factors[,]" and stated that the district court "may, of course, award more after reviewing the authorities cited above." Johnson , 13 F.3d at 1354. Taking inflation into account, as the Ninth Circuit did in Johnson , and noting that the plaintiffs in Johnson were subjected to a single instance of racial abuse from a prospective landlord, rather than multiple instances of racial abuse by a direct supervisor, we do not find the Hearing Officer's emotional distress award of $ 20,000.00 to be excessive. Substantial evidence supports the emotional distress award in Findings of Fact Nos. 36 and 41 and those findings are not clearly erroneous.
CONCLUSION
¶19 The Hearing Officer's Findings of Fact were not clearly erroneous, did not misapprehend the effect of evidence, and this Court's review of the entire record does not convince us that a mistake has been made. The District Court correctly affirmed the HRC's Final Agency Decision and dismissed KB's petition for judicial review.
¶20 Affirmed.
We concur:
MIKE McGRATH, C.J.
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.

Mr. Gustafson is not related to Justice Gustafson.